# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-2427

_____

|  |  |  |
|---|---|---|
| Secura Insurance, a Wisconsin Mutual Insurance Company, | * | |
| | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Horizon Plumbing, Inc., a Kansas Corporation, | * | |
| | * | |
| | * | |
| Defendant, | * | |
| | * | |
| Weitz Company, LLC, an Iowa Limited Liability Company, | * | |
| | * | |
| | * | |
| Defendant - Appellant, | * | |
| | * | |
| MH Metropolitan, LLC, a Colorado Limited Liability Company, | * | |
| | * | |
| | * | |
| Defendant, | * | |
| | * | |
| State Auto Property & Casualty Insurance Company, an Ohio Insuring Company; Federated Mutual Insurance Company, a Minnesota Mutual Insurance Company, | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: January 10, 2012
Filed:   March 5, 2012
_____

Before MURPHY, BYE, and COLLOTON, Circuit Judges.
_____

MURPHY, Circuit Judge.

This declaratory judgment action was brought by Secura Insurance (Secura), an insurer for Horizon Plumbing, Inc. (Horizon), a subcontractor on a troubled construction project. Horizon's two other insurers, State Auto Property & Casualty Insurance Company (State Auto) and Federated Mutual Insurance Company (Federated) later joined. Their dispute with Weitz Company, LLC (Weitz) arose out of a construction project in which Weitz was the general contractor for MH Metropolitan, LLC and MacKenzie House, LLC (collectively Metropolitan). After Weitz and Metropolitan brought breach of contract claims against each other, both filed third party complaints against Horizon for defective plumbing. Horizon's insurers defended and settled all claims against it and reimbursed Weitz for its defense of claims against Horizon. Weitz then contended that since it was an "additional insured" on Horizon's policies, the insurers should pay approximately $1.1 million for attorney fees and costs it incurred in defending against Metropolitan's entire counterclaim.

The insurers filed this action seeking a final judgment that they not be required to pay the attorney fees and costs sought by Weitz in defending against Metropolitan's counterclaim. The district court[1] ordered judgment in their favor, ruling that the

---

[1] The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

insurers had no duty to defend Weitz because its claim was not based on an "occurrence" triggering coverage under the insurance policies, and Weitz appeals. We affirm.

I.

In May 2005 Metropolitan hired Weitz as the general contractor on a project to build an apartment complex in Kansas City, Missouri. Weitz then subcontracted with Horizon for plumbing work. The subcontract required that Weitz be covered as an additional insured on Horizon's commercial general liability policies. After a variety of problems, Weitz stopped work on the project in December 2006. Metropolitan then fired Weitz but had Horizon continue with the plumbing work. A project manager notified Horizon in May 2007 that it had failed to connect two fourth floor balcony drains and that as a result moisture had been entering the building, causing mold growth and flooding in some units.

Earlier in February 2007 Weitz had sued Metropolitan for breach of contract, alleging that Metropolitan had improperly terminated it from the project and failed to pay all sums due it. Metropolitan counterclaimed for breach of contract in June, alleging in part that Weitz had failed timely to complete the project, failed to provide progress reports, failed to supervise, coordinate, and pay subcontractors timely, failed to maintain adequate accounting records, and failed to correct deficient and defective work. Metropolitan filed initial Rule 26(a)(1) disclosures in September 2007, detailing the damages it sought from Weitz.

After filing third party complaints against other subcontractors, Weitz filed a third party complaint against Horizon for indemnity, contribution, and attorney fees based on the allegedly defective plumbing. Metropolitan also filed a third party complaint against Horizon, pleading that it had accepted assignment of the plumbing subcontract and seeking damages for the work. Horizon's insurers defended it against

these claims and settled them. Weitz and Horizon stipulated that Weitz's claim for attorney fees would be decided after trial.

Horizon had purchased a business umbrella liability policy with Secura, as well as commercial general liability policies with Secura, State Auto, and Federated. All of the policies contained provisions stating that property damage was covered only if it was "caused by an occurrence." The policies also included "additional insured" endorsements. Those provisions specified that any party for which Horizon had agreed by contract to provide liability insurance would be an "additional insured" only for property damage arising from Horizon's work.

Weitz had earlier attempted to tender its defense of Metropolitan's entire counterclaim to the insurers, claiming that it was an "additional insured" under the policies. State Auto and Secura apparently did not respond. Federated agreed to participate in Weitz's defense under a reservation of rights and paid the two bills Weitz sent it for "time incurred relative to the Horizon Plumbing issue," a total of $3,803.50.

The case between Weitz and Metropolitan proceeded to a trial in which Horizon did not participate. At the trial's conclusion the jury awarded Metropolitan approximately $5 million in damages and nothing to Weitz. The district court then ordered Horizon to pay Weitz $115,619.80 in attorney fees and $12,576.30 in costs for its defense against Metropolitan's claims related to Horizon's work under its subcontract with Weitz. Counsel for the insurers have stated that they paid this amount on Horizon's behalf, and a satisfaction of judgment was entered. Weitz then demanded from the insurers approximately $1.1 million in attorney fees and costs for defending against Metropolitan's entire counterclaim.

Secura filed this declaratory judgment action, alleging that it had had no duty to defend Weitz in the underlying case. Secura later named State Auto and Federated as third party defendants for contribution. Weitz filed a counterclaim against Secura and cross claims against State Auto and Federated for breach of insurance contracts and vexatious refusal to pay, seeking the attorney fees and costs it had incurred in its defense of Metropolitan's counterclaim and statutory penalties. The insurers filed motions for summary judgment, arguing that Weitz did not qualify as an additional insured under the policies and that even if Weitz was an additional insured it had been fully compensated for all defense costs related to Horizon's work. State Auto made the additional argument that there had been no "occurrence" resulting in "property damage." Weitz filed a cross motion for summary judgment.

The district court granted summary judgment in favor of the insurers, concluding that Metropolitan's breach of contract counterclaim was not an "occurrence" giving rise to coverage under the policies. Weitz filed a motion to alter the judgment or for reconsideration; it was denied. Weitz now appeals, arguing that the insurers had a duty to defend it because Metropolitan's breach of contract counterclaim stated an "occurrence" under the policies.

## II.

We review de novo the district court's grant of summary judgment based on its interpretation of insurance policy provisions. State Farm Fire & Cas. Co. v. Nat'l Research Ctr. for College & Univ. Admissions, 445 F.3d 1100, 1102 (8th Cir. 2006). Summary judgment is proper if there is no genuine issue of material fact and the insurers are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The central insurance question here is whether Metropolitan's breach of contract counterclaim

against Weitz stated a claim for property damage caused by an "occurrence" and triggered a duty to defend.[2]

State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship. Langley v. Allstate Ins. Co., 995 F.2d 841, 844 (8th Cir. 1993). The parties agree that Missouri law controls here. Where no Missouri Supreme Court precedent exists on an issue, we "predict what that court would decide" and consider intermediate appellate court decisions in that process. Raines v. Safeco Ins. Co. of Am., 637 F.3d 872, 875 (8th Cir. 2011). The "cardinal rule" for contract interpretation is to "ascertain the intention of the parties and to give effect to that intention." J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club, 491 S.W.2d 261, 264 (Mo. 1973) (citation omitted). The parties' intent is presumptively expressed by the "plain and ordinary meaning" of the policy's provisions, Mo. Emp'rs Mut. Ins. Co. v. Nichols, 149 S.W.3d 617, 625 (Mo. Ct. App. 2004), which are read "in the context of the policy as a whole." Am. States Ins. Co. v. Mathis, 974 S.W.2d 647, 649 (Mo. Ct. App. 1998).

A duty to defend "arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case," and it is "broader than the duty to indemnify." McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co., 989 S.W.2d 168, 170 (Mo. 1999); see also Esicorp, Inc. v. Liberty Mut. Ins. Co., 193 F.3d 966, 969 (8th Cir. 1999). The duty to defend is determined by the language in the policy and the allegations in the complaint. 989 S.W.2d at 170. In addition to the allegations in the complaint, an insurer should consider whether other facts it knew, or could have learned from a "reasonable investigation" at the time the lawsuit was filed, establish potential coverage. See Trainwreck West Inc. v. Burlington Ins. Co., 235 S.W.3d 33, 42 (Mo. Ct. App. 2007); 193 F.3d at 969. Under Missouri law

---

[2]We deny Secura's motion to supplement the record as unnecessary since the relevant information is included in the district court record to which we have access.

the insured has the burden to show that the policy covers its loss. Mathis, 974 S.W.2d at 649.

Each policy covers "property damage" caused by an "occurrence." The policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Missouri courts have determined that the plain meaning of accident is "[a]n event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event." Mathis, 974 S.W.2d at 650 (citation omitted). Thus, in order to determine whether the insurers had a duty to defend Weitz, we examine whether Metropolitan's breach of contract counterclaim against Weitz contained allegations of property damage caused by an occurrence.

Weitz asserts that the insurers had a duty to defend it because Metropolitan's counterclaim for breach of contract sought damages for losses covered under the policy. Weitz claims that Horizon's alleged failure to connect the drain pipes was an "occurrence" under the policy. Weitz asserts that whether an event is an "occurrence" depends not on the label given to the underlying cause of action, but on the known facts. See Amerisure Mut Ins. Co. v. Paric Corp., No. 4:04cv430, 2005 WL 2708873, at *5 (E.D. Mo. Oct. 21, 2005) (in deciding whether there has been an occurrence, "courts must determine whether the allegations as a whole, and not simply the names of the causes of action . . . reveal an unexpected or undesigned event which the insured did not intend"). Weitz contends that the insurers knew about the damage caused by Horizon's failure to connect the pipes through Metropolitan's 26(a)(1) disclosures and its third party complaint against Horizon.

We have previously recognized that under Missouri law, a lawsuit seeking damages caused by breach of contract does not state an "occurrence." J.E. Jones Constr. Co. v. Chubb & Sons, Inc., 486 F.3d 337, 341 (8th Cir. 2007). This is because

"[p]erformance of the contract according to the terms specified therein was within the insured contractor's control and management and its failure to perform cannot be described as an undesigned or unexpected event." Hawkeye-Sec. Ins. Co. v. Davis, 6 S.W.3d 419, 426 (Mo. Ct. App. 1999) (punctuation omitted) (citing Mathis, 974 S.W.2d at 650). Missouri courts have stated that the purpose of commercial general liability policies is "to protect against the unpredictable and potentially unlimited liability that can result from accidentally causing injury to other persons or their property." Mathis, 974 S.W.2d at 649. Such policies are "not intended to protect business owners against every risk of operating a business," since "[b]usiness risks are those risks that are the normal, frequent, or predictable consequences of doing business, and which business management can and should control and manage." Id. (citing Columbia Mut. Ins. Co. v. Schauf, 967 S.W.2d 74, 77 (Mo. 1998)).

Applying Missouri law, we reject Weitz's argument that Metropolitan's counterclaim asserted potentially covered losses under the policies. Metropolitan's only counterclaim against Weitz was for breach of contract. The allegations supporting that counterclaim included failure timely to complete the project, failure to provide progress reports, failure to supervise, coordinate, and pay timely subcontractors, failure to maintain adequate accounting records, and failure to correct deficient and defective work. Weitz's performance of the contract according to its terms was "within [its] control and management and its failure to perform cannot be described as an undesigned or unexpected event." Mathis, 974 S.W.2d at 650. Weitz's alleged breach of specific contractual provisions, including its failure to perform repair work required by the contract, was therefore not an occurrence. See, e.g., Davis, 6 S.W.3d at 426; J.E. Jones, 486 F.3d at 341.

Moreover, Weitz has not presented evidence of facts known to the insurers or reasonably ascertainable "at the time the action [was] commenced" which would have given rise to a duty to defend. Trainwreck, 235 S.W.3d at 39. The allegations in

Metropolitan's third party complaint against Horizon are irrelevant to the insurers' duty to defend Weitz since they were asserted against Horizon, not Weitz. Metropolitan's Rule 26(a)(1) disclosures did not provide the insurers with information that would have given rise to a duty to defend Weitz. The disclosures contained a preliminary calculation of damages sought due to Weitz's alleged breach of contract, including approximately $15 million in liquidated damages for delay, $2.8 million in completion costs, and $387,577 for "[r]emediation of water infiltration."

Contrary to Weitz's contention, the disclosure of damages sought for failure to remediate defective workmanship was not based on an "occurrence" but rather a breach of a specific contractual duty to correct deficient work. There was no allegation of an accident or that Weitz's conduct had caused property damage. The fact that Weitz's failure to correct the defective workmanship resulted in financial expenses to Metropolitan was a "normal, expected consequence of [Weitz's] breach of contract and not an occurrence." Mathis, 974 S.W.2d at 650. We therefore affirm summary judgment in favor of the insurers because Metropolitan's counterclaim did not state an "occurrence" giving rise to a possibility of coverage under the policies.[3]

We are not persuaded by Weitz's additional arguments to be compensated for the $1.1 million in fees and costs it seeks. Weitz argues that by defending and indemnifying Horizon under the same policies, the insurers waived any right to deny a duty to defend Weitz. We conclude that the insurers did not intentionally relinquish a known right, as required for waiver. See O'Connell v. Sch. Dist. of Springfield R-12, 830 S.W.2d 410, 417 (Mo. 1992). Metropolitan's third party complaint against

---

[3]While only State Auto raised this argument at summary judgment, Weitz received notice of it and had an opportunity to respond. We reject its contention that the argument was somehow waived. The district court acted within its authority when it decided the case on this ground. See Interco Inc. v. Nat'l Sur. Corp., 900 F.2d 1264, 1269 (8th Cir. 1990).

Horizon distinctly alleged mold growth and water damage in other parts of the building caused by Horizon's defective workmanship, as compared to Metropolitan's generalized breach of contract allegations against Weitz for failure to correct deficient work. Insurers' defense of Horizon does not "clearly and unequivocally show a purpose to relinquish" the right to deny Weitz's tender based on a separate counterclaim. Id. We therefore reject Weitz's waiver argument.

Additionally, we reject Weitz's argument that summary judgment was improperly granted to Federated because it had initially accepted Weitz's tender of defense, thereby admitting an obligation to defend Weitz. The record belies Weitz's contention. Federated stated that it would participate in Weitz's defense "against liability arising out of Horizon's operations," but did so expressly reserving all rights under the policy "including the right to deny coverage" or to "withdraw from the defense." It also specifically stated that there would be no coverage "[t]o the extent that any of the claims against Weitz do not seek sums for 'property damage' as the result of an 'occurrence.'" Weitz's argument is thus without merit.

While Weitz now seeks $1.1 million in fees and costs for defending the entire counterclaim, including claims unrelated to Horizon's work, the policies expressly limit coverage for "additional insureds" to damages arising out of Horizon's work. Insurers should not be held "liable for the defense costs of claims their policies do not cover, even when those claims are joined with covered claims." Enron Corp. v. Lawyers Title Ins. Corp., 940 F.2d 307, 311 (8th Cir. 1991); see Harold S. Schwartz & Assocs., Inc. v. Cont'l Cas. Co., 705 S.W.2d 494, 497 (Mo. Ct. App. 1985) ("[W]e see no reason why a company's uiultimate liability for defense costs may not be limited (if clearly stated) to claims covered under the policy."). The insurers have already paid Weitz for all defense costs related to Horizon's work and they owe nothing more.

-10-

Accordingly, the judgment of the district court is affirmed.

BYE, Circuit Judge, concurring in the result.

I believe Metropolitan's Rule 26(a)(1) disclosures provided the insurers with notice of a potentially covered claim and triggered a duty to defend Weitz. See Kirk King, King Constr., Inc. v. Continental W. Ins. Co., 123 S.W.3d 259, 264 (Mo. Ct. App. 2003) (indicating the duty to defend may later devolve upon the insurer, even when the initial pleadings do not contain a potentially covered claim, "where known or reasonably ascertainable facts become available that show coverage.") (quoting John Alan Appleman, 7C Insurance Law and Practice § 4684.01 (1979 ed.)). Metropolitan disclosed claims against Weitz arising from the "water infiltration in units along the west side of the South Building," and claimed $387,577 in damages. This water infiltration claim satisfied the respective policies' definitions of an occurrence because it was an event which happened by chance or fortuitously, without intention or design, and was unexpected, unusual, or unforeseen. See, e.g., Missouri Terrazo Co. v. Iowa Nat'l Mut. Ins. Co., 566 F. Supp. 546, 552 (E.D. Mo. 1983). The presence of the water infiltration claim among Metropolitan's claims against Weitz triggered coverage even if Metropolitan labeled the claim a breach of contract claim. See Koch Eng'g Co. v. Gibralter Cas. Co., 78 F.3d 1291, 1293-94 (8th Cir. 1996) (generally recognizing the facts of the dispute, not the labels given to the dispute by the parties, control whether a duty to defend exists); Amerisure Mut. Ins. Co. v. Paric Corp., No. 4:04CV430-DJS, 2005 WL 2708873 at *5 (E.D. Mo. Oct. 21, 2005) (same).

Despite my disagreement with the majority on whether Metropolitan's Rule 26(a)(1) disclosures included a potentially covered claim and triggered a duty to

defend Weitz, I nonetheless concur in the result. As the majority noted, the insurers have already reimbursed Weitz for all of its attorney fees and expense costs associated with defending the claims involving Horizon's work. Thus, for the reasons expressed in the final paragraph of Section II of the majority's opinion, I join in affirming the judgment of the district court.

_____